**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 11-cv-02857-RM-KLM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAVERNE ST. CLAIR and
BEVERLY ST. CLAIR,

    Defendants.

## ORDER

THIS MATTER is before the Court on Defendants Laverne St. Clair and Beverly St. Clair's ("Defendants") Motion for Summary Judgment ("Motion") (ECF No. 39) and Plaintiff United States of America's ("Plaintiff") cross motion for partial summary judgment ("Cross Motion") contained in its response (ECF No. 42). The parties' dispute centers on the ownership of 7.856 acres of land which Plaintiff contends are contained in "Lot 6." At issue in Defendants' Motion is whether Plaintiff's claims are barred by the statute of limitations. At issue in Plaintiff's Cross Motion is whether it has established, as a matter of law, the land in dispute is located outside of a land patent upon which Defendants rely for their claim of ownership. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345. Upon consideration of the Motion, Plaintiff's Response, Defendants' Reply (ECF No. 49), the Court file, and the applicable law, the Defendants' Motion and Plaintiff's Cross Motion are denied for the reasons stated below.

## I. FACTUAL BACKGROUND

A "township" is the way in which public lands of the United States must be surveyed by dividing lines intersecting true north and south lines at right angles so as to form an area of six-miles square. Each township is subdivided into 36 "sections," on six rows of six, each of which is one-mile square and contains 640 acres as nearly as possible. A township's sections are numbered beginning in the northeast section, proceeding west and east alternatively through the township from 1 to 36. A township's section contains 640 acres; a half section contains 320 acres; a quarter section contains 160 acres; and a "half" of a quarter section 80 acres.[1] A description of land that employs these fractional terms is called an "aliquot parts" description.

In 1877, U.S. Deputy Surveyor J.S. Fahringer of the General Land Office conducted a survey ("Fahringer Survey") of Township 36 North, Range 9 West, New Mexico Meridian, which included Section 33 of Township 36. The Fahringer Survey did not create any lots in Section 33. There are undisputedly "errors" in the Fahringer Survey, but the extent of such errors is disputed.

On October 19, 1881, Plaintiff issued to Walter H. Overocker a patent ("Overocker Patent") for an area described as the S ½ NE ¼ and N ½ SE ¼ of Section 33, Township 36 North, Range 9 West, New Mexico Meridian, stated to contain 160 acres. Subsequently, other surveys were conducted concerning Township 36, such as the Gove survey, Clark survey and Storm survey. The nature of such surveys and their impact on the Overocker Patent are disputed. By 1891, lots were created in Township 36, with the Overocker Patent depicted as located in Lots 8 and 9 of Section 33 and Lot 2 of Section 34, and the disputed acres depicted as located in Lot 6 of Section 33. Exactly when such lots were created and their impact on the Overocker

---

[1] There is a dispute over whether these sections may contain slightly more or less than such acreages, but this dispute is not material at this time in light of the Court's resolution of the Motion and Cross Motion.

Patent are disputed, *e.g.,* whether they accurately reflect the survey field notes on which such depictions are based.

Between 1881 and 1951, the property covered by the Overocker Patent was sold, transferred or otherwise conveyed numerous times. In May 1967, Angelo Dallabetta conveyed land to Defendant Lavern St. Clair and his then-wife, describing the land as in Lot 9, Section 33 and also by metes and bounds. In June 1976, Defendant Lavern St. Clair executed a deed in order to create a joint tenancy between him and Defendant Beverly St. Clair, describing the land as in Lot 9, Section 33 and also by metes and bounds.

On May 25, 1984, Defendant Lavern St. Clair obtained a quit claim deed from the Angelo Dallabetta Trust which stated, in part, that it conveyed the following described property: "A tract of land lying and being in the N ½ SE ¼ of Section 33, Township 36 North, Range 9 West, N.M.P.M. more particularly described as follows…and containing 7.856 acres." The deed also references the land as lying west of Lot 9. If the 7.856 acres are a part of the Overocker Patent, the total acreage for the patent would exceed 160 acres. The effect, if any, of this fact is disputed.

On November 2, 2011, more than 100 years after the issuance of the Overocker Patent, Plaintiff filed this action against Defendants alleging claims for ejectment and trespass. Plaintiff seeks to eject Defendants from and enjoin their occupancy of Lot 6 and recover monetary damages arising from Defendants' alleged trespass.

## II. ANALYSIS

"Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1116 (10th Cir. 2013) (internal alterations and

quotation marks omitted). In evaluating the summary judgment motion, the court "view[s] the facts, and all reasonable inferences those facts support, in the light most favorable to the nonmoving party." *Simmons v. Sykes Enter., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011). If there is no genuine issue of material fact in dispute, the Court determines the correct application of the substantive law and examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, *supra* at 1116; *Oldenkamp v. United Am. Ins. Co.,* 619 F.3d 1243, 1246 (10th Cir. 2010).

### A. The Statute of Limitations.

Congress recognized long ago there should be a statute of limitations such that "when its proper officers, acting in the ordinary course of their duties, have conveyed away lands which belonged to the government, such conveyances should, after the lapse of a prescribed time, be conclusive against the government." *United States v. Winona & St. P.R. CO.,* 165 U.S. 463, 476 (1897); *see also, e.g., United States v. Whited & Wheless, Ltd.*, 246 U.S. 552, 562 (1918). Thus, under the Act of March 3, 1891 ("Act"), suits by the United States to vacate or annul patents issued prior to the passage of the Act must be brought within five years from the passage of the Act.[2] *Whited & Wheless, Ltd.*, *supra* at 560; *see Wollan v. U.S. Dept. of Interior*, 997 F.Supp. 1397, 1401-1402 (D.Colo. 1998) (action by claimant, standing in shoe of the government, for rescission of land conveyances barred by 43 U.S.C. § 1166). Statutes which bar the United States from asserting rights are to be strictly construed, *Whited & Wheless, Ltd.*, *supra* at 561, and, accordingly, the Act is limited to suits to "vacate and annul" patents. *Id.* at 562.

---

[2] Currently, pursuant to 43 U.S.C. § 1166, "[s]uits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents." Plaintiff did not dispute Defendants' reliance on the Act's five year statute of limitations. In light of the age of the Overocker Patent, if this statute of limitations otherwise applies, it matters not whether the former five year bar under the Act or current six year bar under § 1166 applies.

4

The limitations of the Act were acknowledged in *Whited & Wheless, Ltd.,* where the Supreme Court reversed the lower court's dismissal, as time barred, of the United States' suit brought in 1914 to recover the value of public lands described in an 1898 patent allegedly procured by fraud. The Supreme Court noted that if the case was one to "vacate and annul" the patent, it would be barred. *Id.* at 560. The case, however, was one to recover damages and, therefore, the issue was whether the Act barred a suit for the value of land fraudulently procured to be patented. The action was determined not barred because that statute of limitations "relates to the remedy, and in terms applies only to one remedy, that for annulling the patent." *Id.* at 561. *See, e.g., Lee Wilson & Co. v. United States*, 245 U.S. 24, 31-32 (1917) (action to quiet title, where United States sought to correct mistake on a survey, not barred by Act, rejecting contention that rested on "unsound assumption that the correction of such a mistake [was] an attempt to vacate or annul the patent"); *United States v. Winona & St. P.R. Co., supra* at 476 (action for cancellation of certification governed by statute of limitations to vacate or annul patents).

In this case, Defendants argue the disputed acreage was conveyed as part of the Overocker Patent and, therefore, Plaintiff can only claim title to that property if the Overocker Patent was somehow invalid or excluded the subject property. Relying predominately on *United States v. Chandler-Dunbar Water Power Co.,* 209 U.S. 447, 449-450 (1908), Defendants argue Plaintiff is challenging the validity of that patent and, as such, is barred from doing so under the Act. Plaintiff argues that its suit does not attempt to vacate or annul a patent but accepts the Overocker Patent's validity, and that Defendants' reliance on *Chandler-Dunbar Water Power Co.* is misplaced. The Court agrees.

In *Chandler-Dunbar Water Power Co.,* the United States sought to remove a cloud from its alleged title to two islands which defendant claimed under a patent, arguing the patent was void as the land had been reserved. The Supreme Court stated there was "force in the contention … that the land was reserved … [but] we are of the opinion that now the patent must be assumed to be good," *id.* at 449-450, due to the statute of limitations. The Supreme Court went on further to state that: "[i]n form the statute only bars suits to annul the patent. But statutes of limitation, with regard to land . . . are held to affect the right, even if in terms only directed against the remedy." *Id.* at 450. Unlike *Chandler-Dunbar Water Power Co.,* however, here, there is no request – express or implied – to annul, vacate or otherwise void the Overocker Patent.

An examination of the papers and the parties' arguments shows that each side's position is premised on title to the dispute acreage, with Defendants arguing that the acreage is clearly included on the face of the Overocker Patent and Plaintiff arguing that the acreage is in its Lot 6 which is not a part of the Overocker Patent. It appears to the Court that the parties' dispute concerns whether the 7.856 acres lies within or outside the Overocker Patent, the resolution of which would not require vacating or annulling such patent. Accordingly, the Act does not apply to bar Plaintiff's claims.

      **B.**      **The Ownership of the 7.856 Acres.**

In Plaintiff's Response, it seeks partial summary judgment on the issue of the ownership of the disputed 7.856 acres – that such acres are located in Lot 6 owned by Plaintiff. Defendants object on two bases: (1) dispositive motions were due by November 2012; and (2) there are genuine disputes of material facts as to this issue. The Court agrees with Defendants.

Under the Scheduling Order, as modified, dispositive motions were due by November 16, 2012. (ECF No. 38.) Plaintiff's Cross Motion was contained in its Response filed December 14,

2012, almost a month after the due date and without leave of the Court. Moreover, D.C.COLO.LCivR 56.1, expressly states that a cross motion for summary judgment shall not be included in a response brief but, instead, must be made in a separate motion. This Local Rule was also disregarded. Finally, the record shows there are genuine disputes of material facts as to the ownership of the acres at issue. Essentially, the parties rely on their experts to establish whether the disputed acres are or are not included under the Overocker Patent, and the opinions of one expert are disputed by another.

For example, Defendants' experts opined the subsequent creation of Lot 6 lotted over a portion of the property conveyed in the Overocker Patent – property which had already been removed from the public domain and not subject to being replatted without permission. They opined the disputed acres are located in the Overocker Patent. Plaintiff's expert, on the other hand, opined the Overocker Patent is in what became described as Lots 8 and 9 in Section 33 and Lot 2 in Section 34, and that only the description of the Overocker Patent changed, not its physical location. Plaintiff's expert further opined the disputed acres are located in Lot 6 which the Overocker Patent did not extend into and, accordingly, the acres are owned by Plaintiff. Such conflicting opinions in turn rely on the experts' interpretation of records, many of which are not before the Court for its consideration.

### III.  CONCLUSION

Based on the foregoing, the undisputed material facts show Plaintiff's claims are not barred by the statute of limitations under the Act of March 3, 1891. On the other hand, genuine disputes of material facts exist as to the ownership of the 7.856 acres. Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 39) is hereby DENIED; and

FURTHER ORDERED that Plaintiff's cross motion for summary judgment contained in its Response (ECF No. 42) is DENIED.

Dated this 25th day of February, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge